IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVIS IGLESIAS, | ) | |
|     Plaintiff | ) | C.A. 14-22 Erie |
| | ) | |
| v. | ) | District Judge Motz |
| | ) | Magistrate Judge Baxter |
| CORRECTIONAL OFFICER | ) | |
| MROZEK, et al., | ) | |
|     Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I. RECOMMENDATION

It is respectfully recommended that Defendants' motion to dismiss second complaint [ECF No. 12] be granted and that this case be dismissed for Plaintiff's failure to exhaust administrative remedies.

### II. REPORT

#### A. Relevant Procedural History

On January 27, 2014, Plaintiff Davis Iglesias, a prisoner formerly incarcerated at the State Correctional Institution at Forest in Marienville, Pennsylvania ("SCI-Forest"),[1] filed a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983. [ECF No. 3]. He subsequently filed an amended complaint (inaccurately termed and docketed as "second complaint") on February 7, 2014, which is the operative pleading in this case. [ECF No. 7]. Named as Defendants are: Correctional Officer Mrozek ("Mrozek"), Sgt. William ("Williams"), and Lieutenant Hidalgo ("Hidalgo"), corrections officers at SCI-Forest; Michael Overmyer ("Overmyer"), Superintendent at SCI-Forest; and Supervisor Dittman ("Dittman"), Food Service Supervisor at SCI-Forest.

Plaintiff claims, generally, that Defendants were deliberately indifferent to his medical

---

[1] Plaintiff is currently incarcerated at the State Correctional Institution at Frackville, Pennsylvania.

needs regarding his asthma condition; that he was served dinner on an unsanitary food tray; and that he was subject to a retaliatory transfer. As relief for his claims, Plaintiff seeks injunctive relief, and compensatory and punitive damages.

Defendants have filed a motion to dismiss Plaintiff's "second complaint," based, *inter alia*, on his failure to exhaust administrative remedies [ECF No. 12]. Plaintiff has since filed a response in opposition to Defendants' motion [ECF No. 15]. This matter is now ripe for consideration.

### B. Standards of Review

#### 1. Motion to Dismiss

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). A complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)(rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). See also Ashcroft v. Iqbal, 556 U.S. 662 (2009) (specifically applying Twombly analysis beyond the context of the Sherman Act).

The Court need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555, citing Papasan v. Allain, 478 U.S. 265, 286 (1986). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Although the United States Supreme Court does "not require heightened fact

pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, 2008 WL 482469, at *1 (D.Del. February 19, 2008) quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234, quoting Twombly, 550 U.S. at 556.

The Third Circuit Court has prescribed the following three-step approach to determine the sufficiency of a complaint under Twombly and Iqbal:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011), citing Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (quoting Iqbal, 129 S.Ct. at 1947, 1950); see also Great Western Mining & Min. Co. v. Rothschild LLP, 615 F.3d 159, 177 (3d Cir. 2010).

### 2. *Pro Se* Pleadings

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" Haines v. Kerner, 404 U.S. 519, 520 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. See Boag v.

MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969)("petition prepared by a prisoner... may be inartfully drawn and should be read 'with a measure of tolerance'"); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir.1997)(overruled on other grounds). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same). Because Plaintiff is a *pro se* litigant, this Court will consider facts and make inferences where it is appropriate.

### C. Discussion

#### 1. Exhaustion of Administrative Remedies

Defendants argue that the claims against them should be dismissed for Plaintiff's failure to comply with the exhaustion requirements of the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) ("PLRA"), which provides:

> no action shall be brought with respect to prison conditions under section 1983 of this title ... by a prisoner confined in any jail, prisons, or other correctional facility until *such administrative remedies as are available* are exhausted.

Id[2] (emphasis added).

##### a. Exhaustion Requirement

The requirement that an inmate exhaust administrative remedies applies to all inmate

---

[2] It is not a plaintiff's burden to affirmatively plead exhaustion. Jones v. Bock, 549 U.S. 199, 216 (2007) ("...failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."). Instead, the failure to exhaust must be asserted and proven by the defendants. Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002).

suits regarding prison life, including those that involve general circumstances as well as particular episodes. Porter v. Nussle, 534 U.S. 516 (2002); Concepcion v. Morton, 306 F.3d 1347 (3d Cir. 2002) (for history of exhaustion requirement). Administrative exhaustion must be completed prior to the filing of an action. McCarthy v. Madigan, 503 U.S. 140, 144 (1992). Federal courts are barred from hearing a claim if a plaintiff has failed to exhaust all the available remedies. Grimsley v. Rodriquez, 113 F.3d 1246 (Table), 1997 WL 2356136 (Unpublished Opinion) (10th Cir. May 8, 1997).[3] The exhaustion requirement is not a technicality, rather it is federal law which federal district courts are required to follow. Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) (by using language "no action shall be brought," Congress has "clearly required exhaustion").[4]

The PLRA also requires "proper exhaustion" meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules of that grievance system. Woodford v. Ngo, 548 U.S. 81, 87-91 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules ..."). Importantly, the exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally defective ... appeal." Id. at 83; see also Spruill v. Gillis, 372 F.3d 218, 228-29 (3d Cir. 2004) (utilizing a procedural default analysis to reach the same conclusion) (" Based on our earlier

---

[4]

Importantly, a plaintiff's failure to exhaust his administrative remedies does not deprive the district court of subject matter jurisdiction. Nyhuis v. Reno, 204 F.3d 65, 69 n.4 (3d Cir. 2000) ("...[W]e agree with the clear majority of courts that §1997e(a) is *not* a jurisdictional requirement, such that failure to comply with the section would deprive federal courts of subject matter jurisdiction.").

[4]

There is no "futility" exception to the administrative exhaustion requirement. Banks v. Roberts, 2007 WL 3096585, at * 1 (3d Cir.) citing Nyhuis, 204 F.3d at 71 ("[Plaintiff's] argument fails under this Court's bright line rule that 'completely precludes a futility exception to the PLRA's mandatory exhaustion requirement.'"). See also Woodford v. Ngo, 548 U.S. 81, 85 (2006) ("Indeed, as we held in *Booth*, a prisoner must now exhaust administrative remedies even where the relief sought-monetary damages-cannot be granted by the administrative process.").

discussion of the PLRA's legislative history, [...] Congress seems to have had three interrelated objectives relevant to our inquiry here: (1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits.").

### b. Exhaustion Procedure

No analysis of exhaustion may be made absent an understanding of the administrative process available to state inmates. "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. at 218.

The DC-ADM 804 grievance system, available to state prisoners, consists of three separate stages. First, the prisoner is required to timely submit a written grievance within fifteen days of the incident for review by the grievance officer, who is required to issue a written Initial Review Response within fifteen business days of the date the grievance is entered into the Automated Inmate Grievance Tracking System. Second, the inmate may appeal an Initial Review Response/Rejection to the Facility Manager in writing within fifteen working days from the date of the response/rejection. The Facility Manager shall then issue a decision within fifteen working days of receiving the appeal. The decision from the appeal to the Facility Manager must be received by the inmate before he may appeal to Final Review with the Secretary's Office of Inmate Grievances & Appeals, which must be filed within fifteen working days of the date of the Facility Manager's decision.

### c. Analysis

Here, Defendants have submitted the Declaration of Sarah Siegel, who is employed by the DOC as the Superintendent's Assistant and Grievance Coordinator at SCI-Forest. (ECF No. 12-1, Declaration of Sarah Siegel, at ¶¶ 1-2). Ms. Siegel declares, in pertinent part:

> 3. I received Grievance # 467831 from [Plaintiff] on 7/9/13. In that grievance [Plaintiff] claimed that he was denied emergency medical treatment. After an investigation of the grievance, it was denied. The grievance was not appealed. [Plaintiff] did not appeal that grievance to Final Review.
>
> 4. I received Grievance # 467838 from [Plaintiff] on 7/9/13. In that grievance the inmate claims that he was denied assistance when he requested his asthma inhalers in the RHU. After an investigation of the grievance, it was denied. [Plaintiff] appealed that grievance to the Facility Manager. The denial was upheld. [Plaintiff] did not appeal the grievance to Final Review.
>
> 5. I received Grievance # 468762 from [Plaintiff] on 7/16/13. In the grievance the inmate claims that he was served dinner on a dirty food tray. After an investigation of the grievance, it was denied. [Plaintiff] appealed that grievance to the Facility Manager. The denial was upheld. [Plaintiff] did not appeal the grievance to Final Review.
>
> 6. [Plaintiff] did not properly exhaust his administrative process in Grievances # 467831, 467838, and 468762 related to his present legal claims.
>
> 7. The administrative process of appeal to Final Review was available to [Plaintiff]; but he chose not to appeal his grievances any higher than the Facility Manager.
>
> 8. There were no administrative barriers or impediments that kept him from pursuing his grievances to final review.

(ECF No. 12-1, Declaration of Sarah Siegel, at ¶¶ 3-8).

In his response, Plaintiff attempts to refute Defendants' argument that he failed to exhaust his administrative remedies by stating "the fact is section 2 appeals go to the warden/superintendent, and section 3 appeals go to Camp Hill which is another prison and the head of the 3 appeal grievances out [sic] a corrupted prison. They control the mail incoming and outcoming [sic]!" (ECF No. 15, Plaintiff's response, at p. 3). However, a bald assertion that the

prison is corrupt and is in control of all incoming and outgoing mail is insufficient to establish that Plaintiff's administrative remedies were unavailable to him. Absent any affirmative evidence that Defendants, in fact, impeded Plaintiff's ability to appeal his grievances to final review, this Court finds Ms. Siegel's declaration decisive on the issue. Thus, the Court finds that Plaintiff failed to properly exhaust his administrative remedies with regard to all claims in this case, and Defendants' motion to dismiss should be granted accordingly.

### III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendants' motion to dismiss second complaint [ECF No. 12] be granted and that this case be dismissed for Plaintiff's failure to exhaust administrative remedies.

In accordance with the Federal Magistrates Act, 28 U.S.C. § 636(b)(1), and Fed.R.Civ.P. 72(b)(2), the parties are allowed fourteen (14) days from the date of service to file written objections to this report and recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to file objections will waive the right to appeal. Brightwell v. Lehman, 637 F. 3d 187, 193 n. 7 (3d Cir. 2011).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Date:   December 10, 2014

cc:   The Honorable J. Frederick Motz
      United States District Judge